UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NETGEAR, INC. | ) |
| Plaintiff, | ) Case No.: 1:24-cv-5338 |
| v. | ) |
|  | ) **JURY TRIAL DEMANDED** |
| FIREMALL LLC | ) |
| Defendant. | ) |

# COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff NETGEAR, Inc. ("NETGEAR" or "Plaintiff") by and through its undersigned counsel, complains of defendant Firemall LLC's ("Defendant") conduct and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. NETGEAR seeks injunctive relief and monetary damages for Defendant's trademark infringement, false advertising, false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and violations of state law arising from Defendant's wrongful and infringing promotion and sale of NETGEAR's products through online commerce sites including but not limited to, Amazon.com.

2. Defendant's conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of NETGEAR. As a result of Defendant's actions, NETGEAR is suffering a loss of the enormous goodwill that NETGEAR has created in its trademarks and is losing profits from lost sales of products.

1

3. This action seeks permanent injunctive relief and damages for Defendant's infringement of NETGEAR's intellectual property rights.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

5. This Court has personal jurisdiction over Defendant as Defendant (a) is a New York limited liability company registered with the State of New York; and (b) has sold numerous products within the United States, the State of New York, and this District.

6. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## PARTIES

7. Plaintiff NETGEAR is a Delaware corporation with its principal place of business in San Jose, California. NETGEAR is a computer networking company that produces networking hardware for consumers, businesses, and service providers (the "NETGEAR Products"). NETGEAR turns ideas into innovative networking products that connect people, power businesses, and advance the way we live.

8. Defendant Firemall LLC is a New York limited liability company located in Brooklyn, New York. Defendant Firemall LLC is connected to an Amazon Seller Account "Firemall LLC", which has been assigned Amazon user ID A9VBWN1Q1U6E6. Defendant sells its wares, including the NETGEAR Products, to customers throughout the United States including, but not limited to, customers in California and New York.

## FACTS

**A. NETGEAR's Trademark Usage**

9. The U.S. Patent and Trademark Office ("USPTO") has issued Reg. No. 2,124,219 and 5,760,720 for use of the NETGEAR mark on, *inter alia*, "computer network interconnection hardware, namely, routers, bridges, hubs, and switches…" (hereinafter, the "NETGEAR Marks").

10. The NETGEAR Marks have been in continuous use since at least 1996. Said registrations are in full force and effect, and the NETGEAR Marks are incontestable pursuant to 15 U.S.C. § 1065.

11. NETGEAR advertises, distributes, and sells its products to consumers under the NETGEAR Marks.

12. NETGEAR has also acquired common law rights in the use of the NETGEAR Marks throughout the United States.

13. NETGEAR's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of NETGEAR's exclusive ownership of the NETGEAR Marks.

14. NETGEAR has invested significant time, money, and effort in advertising, promoting, and developing the NETGEAR Marks throughout the United States and the world. As a result of such actions, NETGEAR has established substantial goodwill and widespread recognition in its NETGEAR Marks, and the Marks have become associated exclusively with NETGEAR and its products by both customers and potential customers, as well as the general public at large.

15. To create and maintain such goodwill among its customers, NETGEAR has taken substantial steps to ensure that products bearing the NETGEAR Marks are of the highest quality.

As a result, the NETGEAR Marks have become widely known and are recognized throughout the United States and the world as a symbol of high quality products.

### B. Defendant's Infringing and Improper Conduct

16. Defendant has sold and is currently selling products bearing the NETGEAR Marks on several online retail platforms, including, but not limited to, Amazon.com.

17. NETGEAR has never authorized or otherwise granted Defendant permission to sell NETGEAR Products.

18. Defendant represents that the NETGEAR Products it offers for sale on Amazon.com are "new" despite the fact that they are expired, used, closed-out, liquidated, counterfeit, and/or non-genuine product of unknown origin.

19. Because Defendant purchases NETGEAR Product from return and liquidation stock, it is unaware of the condition or the prior chain of custody of the NETGEAR Product it sells. Therefore, all NETGEAR Products sold by Defendant are non-genuine products.

20. Defendant's advertisement of NETGEAR Products and use of the NETGEAR Marks provides customers with a false assurance that the products they purchase from Defendant conform with NETGEAR's high standards and work as intended, when in fact they are receiving non-genuine NETGEAR Products.

21. In addition to harm to consumers, the sale of non-genuine NETGEAR Products directly harms NETGEAR. When consumers purchase NETGEAR Products from Defendant, they expect that the products they receive are new and in proper working order. Instead, their image of NETGEAR is diminished because they receive liquidated, used, or non-genuine product of unknown origin. NETGEAR's opportunity to sell genuine, high-quality products to those

consumers may be lost forever. As a result of Defendant's conduct, NETGEAR suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.

22. On June 21, 2024, a recent customer of Defendant named "Nancy R." left the following 1-star (out of 5-star) feedback after purchasing a, upon information and belief, NETGEAR Product from the Defendant:

> "The switch was inside the box broken, it wasn't even the same model switch as the box said. Someone pulled a swap and sent a broken one back. You should check your returns before putting them back on for resale"

23. A "switch" or ethernet switch comes in all types with options ranging from management style, port counts, PoE capabilities, and port speed. There are various categories of switches for consumers different network demands. As described above, Defendant advertised the product as "new" yet sold a completely different used model.

24. Feedback on Defendant's page suggests that it is Defendant's practice to advertise products as "new" yet sell used and/or tampered with products. This is exactly what happened on June 2, 2024, a "Eddie s." left the following feedback as a 1-star review on Defendant's page:

> "Open tampered with thank you"

25. Similarly, On May 6, 2024, customer "Mathew W." left the following feedback as a 1-star review on Defendant's page:

> "Product was sold as new but was not new, it was opened."

26. One day earlier, another customer "Timothy T." left the following feedback as a 1-star review on Defendant's page:

> "Item was received clearly used, seller offering items as 'new' when they are returned items."

27. Customer "Tom Grant" also complained of Defendant's practice of advertising products as new when they are in fact used. On April 28, 2024, the customer left the following feedback as a 1-star review on Defendant's page:

"100% used product advertised as new."

28. On April 16, 2024, a customer "Makayla;Blake;Derek & Jakey A." left the following feedback as a 1-star review on Defendant's page:

"I was sent what looked to be "used" refurbished product (sic) I returned item back and the seller is refusing a refund? Reported Fraud"

29. On March 22, 2024, another customer of Defendant left the following feedback as a 1-star review on Defendant's page:

"Terrible seller, sells used as new, thief."

30. Furthermore, if a customer purchases a NETGEAR router that has been set up by a customer who later returns the product, the NETGEAR Product sold as "new" by the Defendant may have already been set up and contain someone else's password.

31. A similar situation occurred for a customer "Crystal" who left the following feedback as a 2-star review on Defendant's page on April 13, 2024:

"Deactivate your Ooma account. Could not activate device as the device is still attached to your account and Ooma refuses to help or contact in anyway, Douglas Walker, I assume because the did tell me the name of the account owner the device is attached to."

32. Clearly, Defendant is no stranger to advertising and selling products as "new" when in fact they are used and previously registered.

33. Offering NETGEAR Products as "new" despite the fact that they are expired, used, closed-out, liquidated, counterfeit, and/or non-genuine product of unknown origin results in poor brand experiences such as the above.

34. Defendant's conduct results in consumer confusion, the dilution of NETGEAR's goodwill and trade name, as well as lost sales and profits of actual "new" NETGEAR Products.

35. Defendant is also improperly manipulating the online review system and falsely advertising its positive online review score in order to deceive customers and improperly compete with NETGEAR for sales.

36. Defendant's storefront lists the following:



37. Defendant goes so far as to claim that it has only 1% 1-star reviews, has had no 2-star or 3-star reviews and only a handful of 4-star reviews:



38.     Customers rely upon and use the above positive rating when deciding which merchant to make a purchase from.

39.     However, Defendant's true rating is far lower than it appears, as Defendant is purposefully hiding poor reviews by falsely reporting these reviews as being the fault of the fulfillment service.  In short, Defendant is purposefully suppressing honest negative reviews it has received from customers.

40.     After receiving a poor customer review, Defendant falsely reports the poor customer review as being the fault of the fulfillment service with full knowledge that the fulfillment service had no part in the product which created the poor customer experience.

41.     When reported in this manner, the review does not count towards the seller's feedback score.

42.     Despite holding itself out to consumers as having 99% positive feedback over the last 12 months with 1,032 reviews with zero percent reviews of 3-stars and 2-stars and only 1% of

reviews of 1-stars, approximately 135 of Defendant's customers have left a 1-star review, 15 have left a 2-star review, and 16 have left a 3-star review. Thus, instead of 1% poor reviews, Defendant has received approximately 166 poor reviews in the last 12-months.

43. By falsely reporting the poor feedback as a *fulfillment* issue with full knowledge that it is instead a *product* issue, Defendant purposefully manipulates the feedback to artificially inflate its feedback and positivity score all to its benefit but to the detriment of unsuspecting customers and legitimate resellers who do not engage in this practice.

44. But for Defendant's manipulation and purposeful suppression of honest negative reviews, it would have a far lower feedback and positivity score resulting in far less sales to Defendant and more sales to NETGEAR (which uses Amazon as a retailer).

C. **The Likelihood of Confusion and Injury Caused by Defendant's Actions**

45. Defendant's actions substantially harm NETGEAR by placing infringing, falsely advertised NETGEAR Products into the stream of commerce in the United States through a storefront with an artificially high feedback rating.

46. Defendant's advertisement and sale of non-genuine products bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion by representing to consumers that the NETGEAR Products offered by sale by Defendant are "new" when they are not.

47. Defendant's advertisement and sale of non-genuine products bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion and disappointment regarding NETGEAR's sponsorship or approval of those products creating a false designation of origin in the minds of consumers.

48. Defendant's actions substantially harm NETGEAR's goodwill and reputation when consumers learn that the products bearing the NETGEAR Marks they have purchased from Defendant are not as advertised and from a far less reputable reseller than it appeared.

49. Defendant's conduct results in consumer confusion as well as the dilution of NETGEAR's goodwill and trade name as consumers are not receiving the products they believe they are purchasing.

50. Defendant's conduct as described herein results in the lessening of sales of genuine, properly advertised NETGEAR Products to the detriment of NETGEAR.

51. As a result of Defendant's actions NETGEAR is suffering a loss of the enormous goodwill it created in the NETGEAR Marks.

52. Defendant continues to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to NETGEAR's irreparable harm.

## COUNT I
### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

53. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

55. The acts of Defendant alleged herein constitute the use in commerce, without the consent of NETGEAR, of a reproduction, counterfeit, copy, or colorable imitation of the NETGEAR Mark in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe NETGEAR's rights in the NETGEAR Marks, all in violation of the Lanham Act.

56. Defendant's infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and

the general consuming public as to the origin and quality of such products, and constitute trademark infringement under 15 U.S.C. § 1114.

57. Defendant's use of the NETGEAR Marks in the advertisement or sale of NETGEAR Products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

58. As a direct and proximate result of Defendant's actions, NETGEAR has been, and continues to be, damaged by Defendant's activities and conduct.

59. Defendant has profited thereby, and, unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
### (False Designation of Origin in Violation of 15 U.S.C. § 1125(a))

60. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. This is a claim for false designation of origin under 15 U.S.C. § 1125(a).

62. NETGEAR engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the NETGEAR Marks, throughout the United States.

63. The NETGEAR Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing NETGEAR's products and services.

64. By selling or distributing products using the NETGEAR Marks that are different from those sold by NETGEAR as alleged herein, Defendant is engaging in unfair competition,

falsely designating the origin of its goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to NETGEAR and its goods and services in violation of 15 U.S.C. § 1125(a).

65. By advertising or promoting products using the NETGEAR Marks that are different from those sold by NETGEAR as alleged herein, Defendant is misrepresenting the nature, characteristics, and qualities of its goods and services in violation of 15 U.S.C. § 1125(a).

66. Defendant's continued use of the NETGEAR Marks constitutes the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of 15 U.S.C. § 1125(a)(1)(A).

67. Defendant has used, and continues to use, the NETGEAR Marks to sell products that are different from those sold by NETGEAR in the United States, thereby creating a false designation of origin in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to NETGEAR's goodwill and reputation as symbolized by the NETGEAR Marks, for which NETGEAR has no adequate remedy at law.

68. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

69. By selling and advertising products under the NETGEAR Marks that are different from those sold by NETGEAR, Defendant is using the NETGEAR Marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the public, without NETGEAR's consent. Defendant is falsely designating the origin of its goods and services and/or

falsely representing sponsorship by, affiliation with, or connection to, NETGEAR and its goods and services in violation of 15 U.S.C. 1125(a).  Accordingly, NETGEAR is entitled to a judgment of three times its damages and Defendant's ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

70. As a direct and proximate result of Defendant's actions, NETGEAR has been, and continues to be, damaged by Defendant's activities and conduct.  Defendant has profited thereby, and unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
### (False Advertising in Violation of 15 U.S.C. § 1125(a))

71. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. Defendant has made and distributed, in interstate commerce and in this District, product listings and advertisements that contain false or misleading statements of fact regarding its products.  These advertisements contain actual misstatements and/or misleading statements, including the authenticity, origin, and condition of these products and/or the positivity or feedback rating of its storefront. These false statements actually deceive, or have a tendency to deceive, a substantial segment of NETGEAR's customers and potential customers.  This deception is material in that it is likely to influence the purchasing decisions of NETGEAR's customers.

73. Defendant's false and misleading advertisements violate Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

74. Defendant, as described more fully above, has caused, and will continue to cause, immediate and irreparable injury to NETGEAR for which there is no adequate remedy at law.  As

such, NETGEAR is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its distributors, retailers, agents, employees, representatives, and all persons acting in concert with it, from engaging in further acts of false advertising, and ordering removal of all Defendant's false advertisements.

75. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

76. Pursuant to 15 U.S.C. § 1117, NETGEAR is entitled to recover from Defendant the damages sustained by NETGEAR as a result of Defendant's acts in violation of Section 43 of the Lanham Act.

77. Pursuant to 15 U.S.C. § 1117, NETGEAR is also entitled to recover from Defendant the gains, profits, and advantages that they have obtained as a result of its unlawful acts. NETGEAR is presently unable to ascertain the full amount of the gains, profits, and advantages Defendant has obtained by reason of its unlawful acts.

78. Pursuant to 15 U.S.C. § 1117, NETGEAR is further entitled to recover the costs of this action. Moreover, NETGEAR is informed and believes that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling NETGEAR to recover additional damages and reasonable attorneys' fees.

## COUNT IV
**(Violations of California Business and Professions Code § 17200 et seq.)**

79. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80. The California Unfair Competition Law, codified at Business and Professions Code sections 17200, et seq., prohibits any unlawful, unfair, or fraudulent business act or practice.

81. Defendant's acts, omissions, misrepresentations, and/or practices constitute unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business & Professions Code §§ 17200, et seq.

82. Defendant's misconduct has a tendency and likelihood to deceive members of the public.

83. The foregoing acts and practices have caused substantial harm to NETGEAR.

84. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendant, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

85. Defendant's conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury. Defendant's conduct subjected NETGEAR to unjust hardship in conscious disregard of the Plaintiff's rights, such as to constitute malice, oppression, or fraud under California Civil Code § 3294, thereby entitling NETGEAR to an award of exemplary and punitive damages in an amount appropriate to punish or set an example of Defendant.

### COUNT V
### (Violations of N.Y. General Business Law § 349)

86. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87. N.Y. General Business Law § 349 prohibits any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

88. Defendant's acts, omissions, misrepresentations, and/or practices constitute deceptive acts or practices within the meaning of N.Y. General Business Law § 349.

89. Defendant's misconduct has a tendency and likelihood to deceive members of the public.

90. The foregoing acts and practices have caused substantial harm to NETGEAR.

91. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendant, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

92. Defendant's conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to it, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff NETGEAR, Inc. prays for judgment in its favor and against Defendant providing the following relief:

1. Finding that, (i) as to Count I, Defendant's unauthorized sale of NETGEAR Products infringes on NETGEAR's registered trademark, in violation of 15 U.S.C. § 1114; (ii) as to Count II, Defendant's unauthorized sale of NETGEAR Products constitutes a false designation of origin, in violation of 15 U.S.C. § 1125(a); (iii) as to Count III, Defendant's false advertisement of NETGEAR Products constitutes false advertising, in violation of 15 U.S.C. § 1125(a); and (iv) as to Count IV and V, Defendant's actions constitute a violation of California and New York State law, resulting in Defendant, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendant,

including but not limited to any online platform such as Amazon.com or any other website, website host, website administrator, domain registrar, or internet service provider, being preliminarily and permanently enjoined from:

a. Using or attempting to use, any of NETGEAR's intellectual property, including, but not limited to, the NETGEAR Marks;

b. Advertising, selling, or taking any steps to sell, any products bearing the NETGEAR Marks in an improper manner;

c. Engaging in any activity constituting unfair competition with NETGEAR; and

d. Inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

2. Award NETGEAR its damages suffered as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117, California Business and Professions Code § 17200 et seq., and/or N.Y. General Business Law § 349.

3. Award NETGEAR Defendant's profits as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117, California Business and Professions Code § 17200 et seq, and N.Y. General Business Law § 349;

4. Award NETGEAR statutory damages of $2,000,000.00 per mark pursuant to 15 U.S.C. § 1117(c);

5. Award NETGEAR exemplary and punitive damages in an appropriate amount;

6. Enter judgment that Defendant's acts of infringement have been knowing and willful;

7. Award NETGEAR its reasonable attorneys' fees in bringing this action as allowed by law;

8. Award NETGEAR pre-judgment and post-judgment interest in the maximum amount allowed under the law;

9. Award NETGEAR the costs incurred in bringing this action; and

10. Award NETGEAR such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

NETGEAR hereby requests a trial by jury on all causes of action so triable.

Dated: New York, New York
July 30, 2024

**K&L GATES LLP**

By: /s/ *Thomas A. Warns*

Thomas A. Warns
599 Lexington Avenue
New York, New York 10022-6030
Tel: 212-536-3900
Fax: 212-536-3901
Email: tom.warns@klgates.com
*Attorneys for Plaintiff*